UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **NINETTE DU PREEZ,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**BENCHMARK MAID, LLC, JENNIFER MCCOY d/b/a THE LAW OFFICE OF JENNIFER MCCOY, P.C., and TRANS UNION LLC,**<br><br>**Defendants.** | ) | **Case No. 3:22-cv-00144**<br>**Judge Aleta A. Trauger** |

## MEMORANDUM

Jennifer McCoy d/b/a The Law Office of Jennifer McCoy, P.C. has filed a Rule 12(b)(1) Motion to Dismiss (Doc. No. 16), to which Ninette Du Preez has filed a Response (Doc. No. 19), and Benchmark Maid, LLC ("Benchmark") has filed a Motion to Dismiss (Doc. No. 25), to which Du Preez has filed a Response (Doc. No. 28). For the reasons set out herein, the court will deny McCoy's motion and grant Benchmark's motion.

## I. BACKGROUND[1]

### A. The Fair Debt Collection Practices Act

"The Fair Debt Collection Practices Act ['FDCPA'] imposes civil liability on 'debt collector[s]' for certain prohibited debt collection practices." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 576 (2010) (quoting 15 U.S.C. § 1692a(6)). Enacted in 1977 with the goal of "eliminat[ing] 'abusive, deceptive, and unfair debt collection practices,'" *Barany-*

[1] Unless otherwise indicated, these facts come from Du Preez's Complaint (Doc. No. 1) and are taken as true for the purposes of the pending motions.

*Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quoting 15 U.S.C. § 1692(a)), the FDCPA—like many statutes[2]—envisions a dual system of both public and private enforcement. An individual can sue for violation of her own rights under the FDCPA pursuant to 15 U.S.C. § 1692k. At the same time, the Act grants the Federal Trade Commission and Consumer Financial Protection Bureau the power to enforce the Act against violators on behalf of the government. *See* 12 U.S.C. § 5531; 15 U.S.C. § 1692*l*. As a result, the power and responsibility of enforcing the FDCPA are shared between the federal government, which has deep resources but may be unlikely to prioritize minor violations of the Act, and private persons, who are capable of focusing narrowly on the violations that happen to them—even small ones—but who may lack access to some of the tools available to the government.

"Among other things, the Act prohibits debt collectors from making false representations as to a debt's character, amount, or legal status; communicating with consumers at an 'unusual time or place' likely to be inconvenient to the consumer; or using obscene or profane language or violence or the threat thereof." *Jerman,* 559 U.S. at 577 (citations omitted). The Act also requires a debt collector to take certain steps to ensure that an alleged debtor is made aware of her rights and the nature of the liability being claimed against her. For example, "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall . . . send the consumer a written notice containing" certain required information. 15 U.S.C. § 1692g(a). The required information includes the identity of the creditor, the amount

[2] For example, the Fair Housing Act relies on a "dual enforcement scheme" involving "both private [enforcement]" by individuals and "administrative enforcement" by the Department of Housing and Urban Development, *Mitchell v. Cellone*, 389 F.3d 86, 90 (3d Cir. 2004), and employment discrimination may give rise either to an enforcement action by the Equal Employment Opportunity Commission ("EEOC") or a claim filed by the employee herself after exhausting the EEOC process, *see EEOC v. Pro. Freezing Servs., LLC*, 15 F. Supp. 3d 783, 787 (N.D. Ill. 2013).

of the debt, and certain information regarding the alleged debtor's right to dispute the debt directly to the debt collector. *Id.*; *see also Macy v. GC Servs. Ltd. P'ship*, 897 F.3d 747, 751 (6th Cir. 2018).

**B. The Parties' Dispute**

Du Preez is a resident of Nashville. Benchmark is a Tennessee company that Du Preez hired to perform regular cleaning services at her property. Although the working relationship between Du Preez and Benchmark lasted a while—the Complaint does not say exactly how long—there was never any contract between Du Preez and the company. Rather, Du Preez simply paid Benchmark for its work, first by check and then, later, by credit card. (Doc. No. 1 ¶¶ 5–12.)

One day, a cleaner working for Benchmark damaged some of Du Preez's property—apparently, two sets of blinds. (*See* Doc. No. 1-3.) Du Preez has provided a copy of an email from May 14, 2018, in which Benchmark CEO Carol Silvera agreed to pay for the damage.[3] (*See* Doc. No. 1-2.) On June 30, 2021, Du Preez sent Silvera an email requesting $1,302.94 to cover the cost of replacing the blinds (as well as, according to the email, an additional set of blinds that would need to be changed in order to match the new replacements). (Doc. No. 1 ¶ 14.)

The Complaint in this case provides limited details regarding what happened next, but the conflict expanded to include claims, by Benchmark, that Du Preez had failed to pay money owed to the company for services. The Complaint explains that the parties disagreed "regarding credit and offsets for services"—which may mean that Du Preez unilaterally imposed the claimed liability for damages as a deduction from the fees she otherwise would have paid Benchmark. (*Id.* ¶ 16.) In any event, the precise details of how the parties' disagreements developed are largely beside the point. What matters is that Benchmark claimed that Du Preez owed it money for services

[3] The court notes that the email provided with the Complaint appears to have been excerpted from a longer exchange, with the other portions of the exchange not included. (*See* Doc. No. 1-2.)

rendered, Du Preez believed that she did not, and there was allegedly no written agreement governing pricing, accidental damages, or offsets to guide them in determining who was right.[4]

On September 3, 2021, Benchmark, represented by McCoy as its attorney, filed a Civil Warrant and Affidavit of Indebtedness against Du Preez in Davidson County General Sessions Court for $314.06 plus fees and costs. (*Id.* ¶ 18; Doc. No 1-4.) McCoy did not send a debt validation document to Du Preez prior to suing her on behalf of Benchmark. (Doc. No. 1 ¶ 19.) McCoy also informed credit reporting agencies of the debt. (*Id.*)

According to Du Preez, the "duress" caused by the credit reporting led her to agree to pay the $314.06. (*Id.* ¶ 20.) Du Preez also "sent a dispute to [TransUnion, LLC ("TransUnion"), a credit reporting agency,] to exercise self-help and have the inaccurate and false information removed from her credit [report]." (*Id.*) On September 23, 2021, McCoy sent Du Preez a letter, on behalf of Benchmark, claiming that Du Preez now owed $418.74, based on the initial liability combined with attorney's fees and costs. (Doc. No. 1-5 at 1–2.)

**C. This Lawsuit**

On February 28, 2022, Du Preez filed a Complaint in this court against Benchmark, McCoy, and TransUnion. She stated four counts. Counts I and II are for negligence and fraud by Benchmark and McCoy. Count III is for violation of the FDCPA by McCoy, and Count IV is for violation of the Fair Credit Reporting Act ("FCRA") by TransUnion. (Doc. No. 1 ¶¶ 23–72.) The Complaint includes the following statement of Du Preez's alleged "actual damages":

a. Missed work
b. Travel expenses
c. Attorney fees

[4] In Du Preez's briefing, she repeatedly conflates the lack of a written contract with the absence of a contract altogether. (*See, e.g.*, Doc. No. 29 at 4, 7 (claiming there was "no contract" between the parties). It is well-settled, however, that, "[g]enerally, agreements need not be in writing to be enforceable." *Ledbetter v. Ledbetter*, 163 S.W.3d 681, 685 (Tenn. 2005) (citation omitted).

d. Mailings

e. Cost

f. Credit Damage

- Increased out of pocket expenses
- Loss of credit expectancy
- Loss of credit capacity

g. Emotional distress - stress and anxiety

(*Id.* ¶ 74.) Du Preez eventually filed a Notice of Voluntary Dismissal regarding her claim against TransUnion, informing the court that she and the credit reporting agency had "settled all disputes between them." (Doc. No. 30 at 1.)

On May 9, 2022, McCoy filed a Rule 12(b)(1) Motion to Dismiss asserting that Du Preez's "Complaint fails to demonstrate that [she] has suffered concrete harm as needed for standing" with regard to her FDCPA claim and that the court should therefore dismiss that claim, as well as the state-law claims, which depend on supplemental jurisdiction. (Doc. No. 16 at 1.) On May 11, 2022, Du Preez filed a Response opposing the motion. (Doc. Nos. 19–20.) Neither party has requested a hearing on McCoy's motion.[5]

On May 26, 2022, Benchmark filed a Motion to Dismiss (Doc. No. 25) arguing that the court should dismiss the claims against it because (1) the negligence and fraud claims are barred by the economic loss doctrine; (2) any claims based on credit reporting are preempted by the FCRA; (3) Du Preez failed to allege a breach of a binding duty of care in support of her negligence

[5] McCoy does mention, in passing, that courts may—and, in some situations, should—engage in "supplementary factual proceedings" to ascertain standing. (Doc. No. 17 at 3 (quoting *Kanzelberger v. Kanzelberger*, 782 F.2d 774, 777 (7th Cir. 1986).) McCoy does not, however, request any particular proceedings, and she has not submitted or mentioned evidence that she would submit if such proceedings were instituted. Accordingly, the court will construe her challenge as a facial one, without prejudice to an evidence-based reconsideration of the issue of standing at a later date.

claim; and (4) Du Preez failed to plead the elements of fraud with particularity, as required by Rule 9(b) of the Federal Rules of Civil Procedure. (Doc. No. 25 at 1–2.)

## **II. LEGAL STANDARD**

### **A. Rule 12(b)(1)**

"Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction generally come in two varieties: a facial attack or a factual attack." *Genetek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). When a Rule 12(b)(1) motion contests jurisdiction factually, the court must weigh the evidence in order to determine whether it has the power to hear the case, without presuming the challenged allegations in the complaint to be true. *Id.*; *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). When the facts are disputed in this way, "[t]he district court has broad discretion to consider affidavits, documents outside the complaint, and to even conduct a limited evidentiary hearing if necessary," without converting the motion into one for summary judgment. *Cooley v. United States*, 791 F. Supp. 1294, 1298 (E.D. Tenn. 1992), *aff'd sub nom. Myers v. United States*, 17 F.3d 890 (6th Cir. 1994); *see also Genetek*, 491 F.3d at 330. It is then the plaintiff's burden to show that jurisdiction is appropriate. *DLX*, 381 F.3d at 511.

"When a 12(b)(1) motion attacks the face of a complaint," however, the plaintiff's burden is comparatively "not onerous." *Musson Theatrical Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1248 (6t Cir. 1996). Under that standard, a court evaluating a facial attack to the assertion of subject matter jurisdiction must consider the allegations of fact in the complaint to be true and evaluate jurisdiction by applying the law to those asserted facts. *Genetek*, 491 F.3d at 330; *Jones v. City of Lakeland*, 175 F.3d 410, 413 (6th Cir. 1999).

**B. Rule 12(b)(6) & Rule 9(b)**

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that the plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.

In addition to those general standards, however, Rule 9(b) of the Federal Rules of Civil Procedure states that "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Generally speaking, a plaintiff seeking to comply with Rule 9(b) must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the

fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 504 (6th Cir. 2007) (quoting U.*S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003)).

This heightened pleading standard is designed to prevent "fishing expeditions," to protect defendants' reputations from allegations of fraud, and to narrow potentially wide-ranging discovery to relevant matters. *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466 (6th Cir. 2011) (quoting *U.S. ex rel. SNAPP, Inc. v. Ford Motor Company*, 532 F.3d 496, 503 n.11 (6th Cir. 2008)). However, the Sixth Circuit has explained that Rule 9(b) "should not be read to defeat the general policy of simplicity and flexibility in pleadings contemplated by the Federal Rules." *SNAPP*, 532 F.3d at 504. "So long as a [plaintiff] pleads sufficient detail—in terms of time, place, and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud—to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." *Id.*

## III. ANALYSIS

### A. Standing

Article III of the Constitution grants the federal courts jurisdiction only over "cases and controversies," of which the component of standing is an "essential and unchanging part." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also Warth v. Seldin*, 422 U.S. 490, 498 (1975). A party seeking to invoke the court's jurisdiction must establish the necessary standing to sue before the court may consider the merits of that party's cause of action. *Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990). To establish standing under the Constitution, a plaintiff must show that: (1) he has suffered an "injury in fact" that is concrete and particularized, as well as actual or imminent; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is

likely, as opposed to merely speculative, that the injury will be redressed by the relief requested. *Gaylor v. Hamilton Crossing CMBS*, 582 F. App'x 576, 579–80 (6th Cir. 2014) (citing *Lujan*, 504 U.S. at 560–61); *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000).

The requirements that the plaintiff's injury-in-fact be "(1) particularized and (2) concrete" present distinct "sub-elements" of the standing inquiry, each of which must be established in order for standing to exist. *Ward v. Nat'l Patient Acct. Servs. Sols., Inc.*, 9 F.4th 357, 361 (6th Cir. 2021) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016)). The latter of those requirements—concreteness—has been a frequent subject of litigation, particularly since the Supreme Court's opinion in *Spokeo, Inc. v. Robins*, in which the Court, considering a claim under the FCRA, emphasized, among other things, that Congress's decision to grant an individual a cause of action does not necessarily establish that he experienced a concrete, constitutionally cognizable injury. *See Spokeo*, 578 U.S. at 341 9 ("Article III standing requires a concrete injury even in the context of a statutory violation"). As a result, even a clear, textually manifested congressional intent to create a cause of action may, in some situations, be insufficient to authorize a claim capable of being resolved in the federal courts. Rather, in order to proceed, a statutory claim must comport with both the underlying statute and with Article III. If the plaintiff cannot satisfy the latter, no amount of complying with the former can salvage federal jurisdiction.

For most conventional causes of action, the admonition in *Spokeo* is inconsequential, given that legislatures have tended not to grant causes of action to parties based on facts that did not (or would not imminently) result in at least some kind of concrete injury. The independent constitutional requirement of a concrete injury becomes important, however, when Congress grants a cause of action based solely on a defendant's "bare procedural violation" of some technical

legal requirement—like the technical credit-reporting requirements at issue in *Spokeo* itself. *Id.* at 342. Pursuant to the principles laid out in *Spokeo*, purely technical noncompliance with a federal statute or regulation—without any actual harm or imminent risk of harm—may still be *illegal*, but it cannot be fodder for a cause of action by a private party proceeding in her own name and on her own behalf in federal court. In the absence of a concrete injury to a plaintiff, such violations must be addressed by government enforcement—or not at all.

There is little doubt that there is a concrete dispute somewhere in this case—namely, a fairly run-of-the-mill, low-dollar disagreement between Du Preez and Benchmark regarding whether Du Preez owes Benchmark for past services. However, that kind of contract-law disagreement between citizens of the same state is typically an issue for the state courts, unless there is some additional claim at issue permitting the exercise of federal jurisdiction. With the FCRA claim against Trans Union now resolved, the only such federal hook in this case is the FDCPA.

The FDCPA, as a statute that does, by its text, create a private cause of action based on a defendant's noncompliance with technical requirements, was unsurprisingly one of the first laws to be put through the wringer by the post-*Spokeo* reconsideration of precedents regarding concreteness. The Sixth Circuit, in its consideration of the issue, has confirmed that an FDCPA plaintiff, like an FCRA plaintiff (or any other plaintiff), must allege some concrete harm, in addition to a bare statutory violation, in order to plead a case within the jurisdiction of the federal courts. *See Ward*, 9 F.4th at 362; *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 870 (6th Cir. 2020). For example, the Sixth Circuit has held that a technical failure to accurately state the debt collector's full name in a collection call is not alone sufficient to create a concrete injury capable of conferring jurisdiction. *Ward*, 9 F.4th at 362. The court similarly found a lack of a concrete

injury based on a debt collector's sending letters accurately stating the debt at issue but allegedly giving the false impression that the collector had thoroughly reviewed the debtor's file when it had not. *Buchholz*, 946 F.3d at 870; *see also Kale v. Procollect, Inc.*, 547 F. Supp. 3d 793, 796 (W.D. Tenn. 2021) (finding lack of standing based on technical deficiencies in collection letter).

If Du Preez had alleged merely that McCoy committed a technical error related to, for example, required disclosures, then her claims might well face a similar problem. Du Preez, however, has alleged harms directly traceable to McCoy's alleged violations that are considerably more concrete. Specifically, Du Preez has alleged, among other things, that McCoy (1) filed false debt-related information with a state court and (2) immediately began asserting costs related to that litigation as an additional liability against Du Preez. (*E.g.*, Doc. No. 1 ¶¶ 18, 21, 46, 48; Doc. No. 1-1.) Whether those actions actually violated the FDCPA is not yet before this court. *See Parker v. D.C.*, 478 F.3d 370, 377 (D.C. Cir. 2007) ("The Supreme Court has made clear that[,] when considering whether a plaintiff has Article III standing, a federal court must assume *arguendo* the merits of his or her legal claim.") (citing *Warth*, 422 U.S. at 501–02), *aff'd sub nom. D.C. v. Heller*, 554 U.S. 570 (2008.) Similarly not before the court is the question of whether any principles of abstention, comity, and/or preclusion might prevent this court from considering Du Preez's FDCPA claims on the merits, in light of the separate state proceedings.[6] The only issue currently raised regarding the claims against McCoy is the jurisdictional question of whether Du

[6] Courts have acknowledged that, at least in some situations, actions taken in connection with collection litigation can violate the FDCPA. *See Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 332 (6th Cir. 2006); *Todd v. Weltman, Weinberg & Reis, Co., L.P.A.*, 348 F. Supp. 2d 903, 911 (S.D. Ohio 2004), *aff'd*, 434 F.3d 432 (6th Cir. 2006). Nevertheless, such claims may raise issues related to the conflict between the separate proceedings. *See Givens v. Homecomings Fin.*, 278 F. App'x 607, 608 (6th Cir. 2008). Because no such arguments have yet been raised in this case, the court will not consider those issues, without prejudice to their being raised at a later date.

Preez's allegations, meritorious or not, include an allegation of a concrete injury traceable to McCoy's allegedly unlawful acts.

Unlike the plaintiffs in many FDCPA cases implicating *Spokeo*, Du Preez does not merely allege that McCoy violated technical requirements in connection with the collection of a legitimate debt. Nor does Du Preez merely allege that McCoy simply made improper statements in a letter or phone call that was seen or heard only by Du Preez herself. Rather, Du Preez alleges that McCoy affirmatively initiated General Sessions collection proceedings based on a debt that was not legitimate. Allowing Du Preez's claims to proceed based on her alleged injuries associated with the actual filing of that allegedly unfounded collection action is consistent with the Supreme Court's analysis in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021), a post-*Spokeo* class action case involving plaintiffs whose credit reports allegedly included a certain type of misleading negative alert. In *TransUnion*, the Supreme Court held that the plaintiffs whose negative reports had actually been disseminated to third parties did, in fact, suffer a concrete injury—without the need for an additional showing of harm—whereas the plaintiffs who could only establish that a misleading alert had appeared in their files did not. *Id.* at 2209, 2212–13. Similarly, McCoy conveyed the disputed information regarding Du Preez's debt to a third party—the state court—and, if that was not enough, McCoy began asserting a specific, additional monetary liability against Du Preez based on the filing of that case. While the post-*Spokeo* caselaw regarding abstract, non-economic injuries may still be in flux, even "[a] dollar of economic harm is . . . an injury-in-fact for standing purposes." *Johnson v. BLC Lexington, SNF, LLC*, No. CV 5:19-064-DCR, 2020 WL 3578342, at *2 (E.D. Ky. July 1, 2020) (quoting *Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 5 (D.C. Cir. 2017)).

Moreover, the court notes that the harms that Du Preez has alleged closely resemble those associated with the traditional tort of abuse of process. *See* 1 Am. Jur. 2d Abuse of Process § 1 ("'Abuse of process' occurs when a person uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed."). Under *Spokeo*, similarity to harms addressed by torts under the common law is a strong indicator that a particular injury is of the type contemplated by Article III. *See Spokeo*, 578 U.S. at 340–41 ("Because the doctrine of standing derives from the case-or-controversy requirement, and because that requirement in turn is grounded in historical practice, it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts.") (citing *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 775–77 (2000)). That similarity therefore supports a finding of concrete injury-in-fact.

Du Preez has alleged that McCoy violated the FDCPA in ways that (1) disparaged Du Preez's reputation to a third party, (2) embroiled Du Preez in a baseless collection action, and (3) resulted in the assertion of a greater debt liability against Du Preez. Those harms are concrete, and Du Preez's assertion of the harms is sufficient to defeat the motion to dismiss for lack of jurisdiction based on the face of the Complaint.

**B. Merits of Claims Against Benchmark**

Benchmark raises four arguments in support of its motion to dismiss. First, Benchmark argues that Du Preez's negligence and tort claims are barred by the economic loss doctrine. Second, Benchmark argues that any claims based on actions related to credit reporting are preempted by the FCRA. Third, Benchmark argues that the court should dismiss the negligence claim because Du Preez has not sufficiently alleged a duty of care. Finally, Benchmark argues that

Du Preez has failed to plead fraud with particularity, as required by Rule 9(b) of the Federal Rules of Civil Procedure.

1. Economic Loss Doctrine

The economic loss doctrine is a "judicially-created remedies principle," most often applied in products liability litigation, "that operates generally to preclude contracting parties from pursuing tort recovery for purely economic or commercial losses associated with the contract relationship." *Milan Supply Chain Sols., Inc. v. Navistar, Inc.*, 627 S.W.3d 125, 142 (Tenn. 2021) (quoting *Plourde Sand & Gravel v. JGI E.*, Inc., 154 N.H. 791, 793 (2007)). The "relatively recent vintage" of this "judicially-created rule" has resulted in some uncertainty regarding its scope. *See id.* at 142, 145–51. As relevant to this case, the Tennessee Supreme Court has recently acknowledged that it, unlike the courts of a number of other states, "has never applied the economic loss doctrine outside the products liability context"—although the court did not rule out the possibility that it might do so in the future. *See id.* at 144–45.

In the wake of the Tennessee Supreme Court's recent partial clarification of the doctrine, the Tennessee Court of Appeals held that it does extend, if not to all civil claims, at least to some non-products liability claims involving "contracts negotiated between sophisticated commercial entities." *Com. Painting Co. Inc. v. Weitz Co. LLC*, No. W2019-0208-9COA-R3-CV, 2022 WL 737468, at *1 (Tenn. Ct. App. Mar. 11, 2022). The Court of Appeals, however, acknowledged the unsettled nature of that question, *id.* at *12–24, and, in August of this year, the Tennessee Supreme Court granted permission to appeal that determination, with instructions to focus on whether the Court of Appeals erred in expanding the economic loss doctrine. *Com. Painting Co. Inc. v. Weitz Co. LLC,* No. W2019-02089-SC-R11-CV, 2022 WL 3149615 (Tenn. Aug. 4, 2022). That case remains pending.

Although the scope of the economic loss doctrine is uncertain, nothing in the Complaint suggests that Du Preez and Benchmark had the kind of sophisticated commercial relationship that would support applying even a somewhat expanded version of the doctrine in this case. Rather, all Du Preez describes is the relationship between a cleaning service and a client who, at least based on the information in the Complaint, cannot be assumed to be a sophisticated commercial actor. For the economic loss doctrine to apply to such a situation, the Tennessee Supreme Court would be required not only to expand the doctrine beyond its currently acknowledged scope, but to expand it even more aggressively than it appears to be currently considering. The court finds that prospect unlikely, and, because this court's duty is to apply the law in the manner that it believes the Tennessee Supreme Court would, *see Smith v. Gen. Motors LLC*, 988 F.3d 873, 878 (6th Cir. 2021), the economic loss doctrine does not provide an independent basis for dismissing the claims against Benchmark.

2. Preemption

"The FCRA provides that '[n]o requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies[.]'" *Scott v. First S. Nat'l Bank*, 936 F.3d 509, 519 (6th Cir. 2019) (quoting 15 U.S.C. § 1681t(b)(1)(F)). The Sixth Circuit has construed that language to establish that "the FCRA preempts both state statutory and state common law claims" regarding the relevant subject matter. *Id.* at 521.

Du Preez's Complaint is not always clear with regard to the details of her intended theory of liability. It is apparent, however, that she has asserted at least some state-law liability based on credit reporting activities. For example, Du Preez cites certain representations to credit reporting

agencies in the language of her Complaint stating her fraud claims. (Doc. No. 1 ¶¶ 34–35.) Du Preez, in her briefing, offers no meaningful argument why any such claims should not be preempted. Rather, she merely notes that her claims "are not based solely on information provided to credit agencies"—which is undoubtedly true. (Doc. No. 29 at 5.) The mere presence of other allegations, however, does not make any preempted theory of liability any more viable. Benchmark is therefore entitled to have the claims against it dismissed insofar as they are premised on credit reporting.

3. Duty/Negligence

"In order to prevail on a claim of negligence, the plaintiff must prove by a preponderance of the evidence the following elements: '(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate or legal cause.'" *Downs ex rel. Downs v. Bush*, 263 S.W.3d 812, 819 (Tenn. 2008) (quoting *West v. E. Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 550 (Tenn. 2005)). Benchmark argues that Du Preez has failed to allege facts sufficient to support the first element, the existence of a duty of care, the violation of which is an actual and proximate cause of the injuries alleged. A duty of care on behalf of the defendant is "an essential element of all negligence claims," and, while the question of whether a duty was violated typically involves issues of fact, the initial determination of whether a duty existed presents "a question of law to be determined by courts." *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 355 (Tenn. 2008) (citing *West*, 172 S.W.3d at 550; *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993)).

Generally speaking, the duty of care is "the legal obligation owed by defendant to plaintiff to conform to a reasonable person standard of care for the protection against unreasonable risks of

harm." *Downs*, 263 S.W.3d at 819 (Tenn. 2008) (citation omitted). In Tennessee, *some* duty of care exists, at least potentially, in nearly every setting in which individuals come into contact with each other, because "[m]embers of a civil society, as a general rule, must refrain from committing affirmative acts that a reasonable person should recognize as subjecting another to an unreasonable risk of harm or posing an unreasonable risk of invasion to another's interests." *Marla H. v. Knox Cnty.*, 361 S.W.3d 518, 531 (Tenn. Ct. App. 2011) (citation omitted). That does not, however, mean that the duty of care encompasses every obligation that a person has not to harm the interests of another. For example, one typically would not characterize a contracting party's refusal to pay money it owed under a contract as a violation of the "duty of care" in paying. Rather, it would simply be a breach of the contract.

Du Preez argues that Benchmark owed her "a duty . . . to properly account for services, properly adjudicate claims[,] and provide truthful and accurate information." (Doc. No. 29 at 5–6.) As Benchmark correctly points out, however, what Du Preez is describing is not a duty of care, cognizable in tort, but rather the duty of good faith and fair dealing that applied to the unwritten contractual relationship between Du Preez and Benchmark. *See Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 661 (Tenn. 2013) (explaining implied covenant of good faith and fair dealing).

Moreover, insofar as Benchmark might have had some parallel duty of care capable of supporting a tort claim, the Complaint does not sufficiently plead what that duty entailed or how it was violated, other than just by stating, in conclusory fashion, that Benchmark was wrong about what Du Preez owed. Indeed, the version of facts put forth in the Complaint does not resemble an allegation of negligence at all. Du Preez does not allege that Benchmark calculated her balance due in a sloppy or careless manner. To the contrary, insofar as the Complaint explains the conflict

in meaningful detail at all, it describes a situation in which the parties consciously and intentionally disagreed about who owed what as part of their established business relationship.

Du Preez has not identified a single Tennessee case holding that a dispute such as this one should be considered and decided pursuant to tort principles. Rather, Du Preez's position appears to be, in essence, that any time a party is accused of not doing something "properly," that allegation can be funneled into a claim for negligence. If Du Preez had supported that approach with persuasive Tennessee authority sufficient to convince this court that the Tennessee Supreme Court would agree with her counterintuitive position, then the strangeness of such a claim would not, in and of itself, be fatal. Without such support, however, this court concludes that the Tennessee Supreme Court would likely not consider the facts set forth in the Complaint sufficient to state a claim for negligence against Benchmark. The court accordingly will dismiss that claim.

<u>4. Pleading Fraud With Particularity</u>

"'[I]ntentional misrepresentation,' 'fraudulent misrepresentation,' and 'fraud' are different names for the same cause of action" under Tennessee law. *Hodge v. Craig*, 382 S.W.3d 325, 342 (Tenn. 2012) (citing *Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 904 n.1 (Tenn.1999)). A plaintiff asserting such a claim must establish six elements:

> (1) that [the defendant] made a representation of an existing or past fact; (2) that the representation was false when it was made; (3) that the representation involved a material fact; (4) that [the defendant] made the representation recklessly, with knowledge that it was false, or without belief that the representation was true; (5) that the [plaintiff] reasonably relied on the representation; and (6) that [the plaintiff was] damaged by relying on the representation.

*Davis v. McGuigan*, 325 S.W.3d 149, 154 (Tenn. 2010) (citing *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008)). Because a fraud claim is subject to Rule 9(b), each of its "elements . . . must be pleaded with . . . particularity," *U.S. ex rel. Marlar v. BWXT Y-*

*12, L.L.C.*, 525 F.3d 439, 445 (6th Cir. 2008), with the exception of culpable mental state, which the rule expressly states "may be alleged generally," Fed. R. Civ. P. 9(b).

Benchmark argues that Du Preez has, at most, alleged an ordinary dispute between two parties who found themselves at an impasse regarding how liabilities should be calculated and has failed to plead the specific elements of fraud, including, in particular, reliance. The court agrees. Insofar as any of Benchmark's representations about Du Preez's balance was false, they were not made in any manner that would be reasonably expected to—or did—result in reliance by Du Preez. Indeed, by Du Preez's own account, she always understood what she did and did not owe Benchmark under their established terms of business. There is no assertion that she was ever tricked or led astray by Benchmark's representations. Rather, when Benchmark told Du Preez that she owed additional payment, Du Preez rejected the assertion.

A general allegation of wrongdoing—or even a general allegation of dishonesty—is not sufficient to support a claim for common law fraud under Rule 9(b). A plaintiff must allege the specific elements of the pleaded cause of action with the required degree of particularity. Because Du Preez has not pleaded particular facts sufficient to support the claim that she was actually defrauded—as opposed to simply harmed in some other way—the court will dismiss the fraud claim against Benchmark.

## IV. CONCLUSION

For the foregoing reasons, McCoy's Motion to Dismiss (Doc. No. 16) will be denied, and Benchmark's Motion to Dismiss (Doc. No. 25) will be granted. The court will dismiss all claims pending against Benchmark, leaving only Du Preez's claims against McCoy before the court.[7]

[7] The Complaint seeks to state causes of action for fraud and negligence against both Benchmark and McCoy. As the court has held, those causes of action were not sufficiently pleaded against Benchmark. It appears to the court that the same arguments that were fatal to the common law claims against Benchmark would likely be applicable to the common law claims against McCoy, as well. Nevertheless, McCoy has,

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge

at this point, not disputed the claims against her on the merits, choosing rather to focus first on the issue of standing. Accordingly, the common law claims against McCoy will remain pending.