UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| NINETTE DU PREEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:22-cv-00144 |
| | ) | Judge Aleta A. Trauger |
| BENCHMARK MAID, LLC, | ) | |
| JENNIFER MCCOY d/b/a THE LAW | ) | |
| OFFICE OF JENNIFER MCCOY, P.C., | ) | |
| and TRANS UNION LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM & ORDER

Jennifer McCoy d/b/a The Law Office of Jennifer McCoy, P.C. has filed a Motion for Judgment on the Pleadings (Doc. No. 41), to which Ninette Du Preez has filed a Response (Doc. No. 44), and McCoy has filed a Reply (Doc. No. 46). For the reasons set out herein, the motion will be granted, but, because there is one cause of action against this one remaining defendant that the motion does not address, the case will remain pending.

## I. BACKGROUND[1]

### A. The Fair Debt Collection Practices Act

"The Fair Debt Collection Practices Act ['FDCPA'] imposes civil liability on 'debt collector[s]' for certain prohibited debt collection practices." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 576 (2010) (quoting 15 U.S.C. § 1692a(6)). Enacted in 1977 with the goal of "eliminat[ing] 'abusive, deceptive, and unfair debt collection practices,'" *Barany-*

---
[1] Unless otherwise indicated, these facts come from Du Preez's Complaint (Doc. No. 1) and McCoy's Answer (Doc. No. 40).

*Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quoting 15 U.S.C. § 1692(a)), the FDCPA—like many statutes[2]—envisions a dual system of both public and private enforcement. An individual can sue for violation of her own rights under the FDCPA pursuant to 15 U.S.C. § 1692k. At the same time, the Act grants the Federal Trade Commission and Consumer Financial Protection Bureau the power to enforce the Act against violators on behalf of the government. *See* 12 U.S.C. § 5531; 15 U.S.C. § 1692*l*. As a result, the power and responsibility of enforcing the FDCPA are shared between the federal government, which has deep resources but may be unlikely to prioritize minor violations of the Act, and private persons, who are capable of focusing narrowly on the violations that happen to them—even small ones—but who may lack access to some of the tools available to the government.

"Among other things, the Act prohibits debt collectors from making false representations as to a debt's character, amount, or legal status; communicating with consumers at an 'unusual time or place' likely to be inconvenient to the consumer; or using obscene or profane language or violence or the threat thereof." *Jerman,* 559 U.S. at 577 (citations omitted). The Act also requires a debt collector to take certain steps to ensure that an alleged debtor is made aware of her rights and the nature of the liability being claimed against her. For example, "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall . . . send the consumer a written notice containing" certain required information. 15 U.S.C. § 1692g(a). The required information includes the identity of the creditor, the amount

---

[2] For example, the Fair Housing Act relies on a "dual enforcement scheme" involving "both private [enforcement]" by individuals and "administrative enforcement" by the Department of Housing and Urban Development, *Mitchell v. Cellone*, 389 F.3d 86, 90 (3d Cir. 2004), and employment discrimination may give rise either to an enforcement action by the Equal Employment Opportunity Commission ("EEOC") or a claim filed by the employee herself after exhausting the EEOC process, *see EEOC v. Pro. Freezing Servs., LLC,* 15 F. Supp. 3d 783, 787 (N.D. Ill. 2013).

2

Case 3:22-cv-00144   Document 47   Filed 07/14/23   Page 2 of 11 PageID #: 190

of the debt, and certain information regarding the alleged debtor's right to dispute the debt directly to the debt collector. *Id.*; *see also Macy v. GC Servs. Ltd. P'ship*, 897 F.3d 747, 751 (6th Cir. 2018).

**B. Du Preez's Dispute with Benchmark**

Du Preez is a resident of Nashville. Du Preez hired Benchmark Maid LLC ("Benchmark") to perform regular cleaning services at her property. Although the working relationship between Du Preez and Benchmark lasted a while—the Complaint does not say exactly how long—there was never any written contract between Du Preez and the company. Rather, Du Preez simply paid Benchmark for its work, first by check and then, later, by credit card. (Doc. No. 1 ¶¶ 5–12; Doc. No. 40 ¶¶ 5–12.)

One day, a cleaner working for Benchmark damaged some of Du Preez's property—apparently, two sets of blinds. (*See* Doc. No. 1-3.) Benchmark CEO Carol Silvera apparently agreed to pay for the damage, but Benchmark and Du Preez were unable to come to an agreement regarding an appropriate sum. (*See* Doc. No. 1-2.) Eventually, the conflict expanded to include claims, by Benchmark, that Du Preez had failed to pay money owed to the company for services. The Complaint explains that the parties disagreed "regarding credit and offsets for services." (Doc. No. 1 ¶ 16.)

On September 3, 2021, Benchmark, represented by McCoy as its attorney, filed a Civil Warrant and Affidavit of Indebtedness against Du Preez in Davidson County General Sessions Court for $314.06, plus fees and costs, including $104.68 in attorney's fees. (*Id.* ¶ 18; Doc. No 1-4.) Du Preez alleges that McCoy did not send a debt validation document to Du Preez before filing suit, which McCoy denies. (Doc. No. 1 ¶ 19; Doc. No. 40 ¶ 19.) McCoy also, she concedes, informed credit reporting agencies of the debt. (*Id.*)

3

According to Du Preez, the "duress" caused by the credit reporting led her to agree to pay the $314.06. (Doc. No. 1 ¶ 20.) Du Preez also "sent a dispute to [TransUnion, LLC ("TransUnion"), a credit reporting agency,] to exercise self-help and have the inaccurate and false information removed from her credit [report]." (*Id.*) On September 23, 2021, McCoy sent Du Preez a letter, on behalf of Benchmark, claiming that Du Preez now owed $418.74, based on the initial liability combined with "interest, late charges, and other charges." (Doc. No. 1-5 at 1–2.)

**C. This Lawsuit**

On February 28, 2022, Du Preez filed a Complaint in this court against Benchmark, McCoy, and TransUnion. She stated four counts. Counts I and II were for negligence and fraud by Benchmark and McCoy. Count III was for violation of the FDCPA by McCoy, and Count IV was for violation of the Fair Credit Reporting Act ("FCRA") by TransUnion. (Doc. No. 1 ¶¶ 23–72.) Du Preez eventually filed a Notice of Voluntary Dismissal regarding her claim against TransUnion, informing the court that she and the credit reporting agency had "settled all disputes between them." (Doc. No. 30 at 1.)

On May 9, 2022, McCoy filed a Rule 12(b)(1) Motion to Dismiss, asserting that Du Preez's "Complaint fails to demonstrate that [she] has suffered concrete harm as needed for standing" with regard to her FDCPA claim and that the court should therefore dismiss that claim, as well as the state-law claims, which depend on supplemental jurisdiction. (Doc. No. 16 at 1.) On May 26, 2022, Benchmark filed its own Motion to Dismiss (Doc. No. 25), arguing that the court should dismiss the claims against it because (1) the negligence and fraud claims are barred by the economic loss doctrine; (2) any claims based on credit reporting are preempted by the FCRA; (3) Du Preez failed to allege a breach of a binding duty of care in support of her negligence claim; and

4

(4) Du Preez failed to plead the elements of fraud with particularity, as required by Rule 9(b) of the Federal Rules of Civil Procedure. (Doc. No. 25 at 1–2.)

On November 9, 2022, the court issued a Memorandum and Order, in which it granted Benchmark's motion but denied Du Preez's. (Doc. Nos. 33–34.) On the issue of standing, the court wrote that, while recent jurisprudence had brought the viability of some statutorily authorized FDCPA claims—particularly those involving bare violations of technical requirements—into question, Du Preez had adequately pleaded concrete and particularized injuries sufficient to invoke the jurisdiction of the federal courts. (Doc. No. 33 at 8–13.) The court similarly found Benchmark's argument based on the economic loss doctrine to be unpersuasive. (*Id.* at 14–15.)

Benchmark's other arguments, however, were well-supported. The court concluded, first, that Benchmark was "entitled to have the claims against it dismissed insofar as they are premised on credit reporting," because any such claims would be pre-empted. (*Id.* at 16.) Next, the court agreed with Benchmark that Du Preez had not pleaded any theory recognized under Tennessee law as giving rise to a cause of action for negligence. (*Id.* at 16–18.) Finally, the court concluded that Du Preez had failed to plead allegations of fraud by Benchmark with the degree of particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. (*Id.* at 18–19.) Accordingly, the court "dismiss[ed] all claims pending against Benchmark, leaving only Du Preez's claims against McCoy before the court." (*Id.* at 19.)

In a concluding footnote, the court observed:

> The Complaint seeks to state causes of action for fraud and negligence against both Benchmark and McCoy. As the court has held, those causes of action were not sufficiently pleaded against Benchmark. It appears to the court that the same arguments that were fatal to the common law claims against Benchmark would likely be applicable to the common law claims against McCoy, as well. Nevertheless, McCoy has, at this point, not disputed the claims against her on the merits, choosing rather to focus first on the issue of standing. Accordingly, the common law claims against McCoy will remain pending.

5

(Id. at 19–20 n.7.) On January 26, 2023, McCoy filed a Motion for Judgment on the Pleadings based, in significant part, on the court's holdings in connection with the Benchmark motion. The motion contains no arguments directed at Du Preez's FDCPA claim against McCoy—only her negligence and fraud claims. (*See* Doc. No. 42 at 2.)

## II. LEGAL STANDARD

A motion for judgment on the pleadings under Rule 12(c) is governed by the same standards that govern a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Reilly v. Vadlamudi*, 680 F.3d 617, 622-23 (6th Cir. 2012). In deciding a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002).

The Federal Rules of Civil Procedure require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[threadbare] recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In addition to those general standards, Rule 9(b) of the Federal Rules of Civil Procedure states that "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ.

P. 9(b). Generally speaking, a plaintiff seeking to comply with Rule 9(b) must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 504 (6th Cir. 2007) (quoting U.*S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003)).

This heightened pleading standard is designed to prevent "fishing expeditions," to protect defendants' reputations from allegations of fraud, and to narrow potentially wide-ranging discovery to relevant matters. *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466 (6th Cir. 2011) (quoting *U.S. ex rel. SNAPP, Inc. v. Ford Motor Company*, 532 F.3d 496, 503 n.11 (6th Cir. 2008)). However, the Sixth Circuit has explained that Rule 9(b) "should not be read to defeat the general policy of simplicity and flexibility in pleadings contemplated by the Federal Rules." *SNAPP*, 532 F.3d at 504. "So long as a [plaintiff] pleads sufficient detail—in terms of time, place, and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud—to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." *Id.*

### III. ANALYSIS

#### A. Preemption

"The FCRA provides that '[n]o requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies[.]'" *Scott v. First S. Nat'l Bank*, 936 F.3d 509, 519 (6th Cir. 2019) (quoting 15 U.S.C. § 1681t(b)(1)(F)). The Sixth Circuit has construed that language to establish that "the FCRA preempts both state statutory and state common law claims" regarding the relevant subject matter.

7

*Id.* at 521. Du Preez does not dispute that the FCRA's preemption provision would prevent her from asserting claims for fraud or negligence arising out of credit reporting activity. Rather, she identifies one aspect of her claims that, she argues, should not be considered preempted: her assertion of liability based on McCoy's "filing a general session summons against [Du Preez] without due diligence." (Doc. No. 45 at 4.)

When the court considered preemption as it related to the claims against Benchmark, the court concluded that the claims were preempted "insofar as they are premised on credit reporting," and the court finds the same approach satisfactory here. (Doc. No. 33 at 16.) The Complaint is fairly vague regarding the basis for Du Preez's negligence and fraud claims, but it is clear that those claims have been asserted, at least in part, based on credit reporting activities. (*See* Doc. No. 1 ¶ 34.) Du Preez has made no argument refuting the contention that those aspects of her claims are preempted. The court, accordingly, will recognize that preemption, and it will assess the substance of Du Preez's negligence and fraud claims based solely on the allegations that are not directly related to credit reporting.

### B. Negligence

"In order to prevail on a claim of negligence, the plaintiff must prove by a preponderance of the evidence the following elements: '(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate or legal cause.'" *Downs ex rel. Downs v. Bush*, 263 S.W.3d 812, 819 (Tenn. 2008) (quoting *West v. E. Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 550 (Tenn. 2005)). A duty of care on behalf of the defendant is "an essential element of all negligence claims," and, while the question of whether a duty was violated typically involves issues of fact, the initial determination of whether a duty existed presents "a question of law to be

8

Case 3:22-cv-00144    Document 47    Filed 07/14/23    Page 8 of 11 PageID #: 196

determined by courts." *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 355 (Tenn. 2008) (citing *West*, 172 S.W.3d at 550; *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993)).

Du Preez has not identified any authority suggesting that McCoy, as the attorney for Du Preez's litigation opponent, owed any special duty to Du Preez. Insofar as any claim exists, therefore, it must be based on ordinary principles of general negligence. Pursuant to those principles, the duty of care is, broadly speaking, "the legal obligation owed by defendant to plaintiff to conform to a reasonable person standard of care for the protection against unreasonable risks of harm." *Downs*, 263 S.W.3d at 819 (citation omitted). In Tennessee, *some* duty of care exists, at least potentially, in nearly every setting in which individuals come into contact with each other, because "[m]embers of a civil society, as a general rule, must refrain from committing affirmative acts that a reasonable person should recognize as subjecting another to an unreasonable risk of harm or posing an unreasonable risk of invasion to another's interests." *Marla H. v. Knox Cnty.*, 361 S.W.3d 518, 531 (Tenn. Ct. App. 2011) (citation omitted). The pervasiveness of the general duty of care, however, highlights how important it is to recognize the boundary between actual, actionable negligence and behavior that people simply find inconvenient or objectionable.

In Du Preez's briefing, she alleges that McCoy, in her representation of Benchmark, acted negligently by overstating the amount at issue in the state-court collection action against Du Preez. Specifically, Du Preez argues that McCoy wrongly asserted liability for about $100 of attorney's fees, which, according to Du Preez, Benchmark had no right to claim. (*See* Doc. No. 1-4 at 1.)

However, Du Preez has not identified any Tennessee caselaw recognizing the viability of a negligence claim by a litigant against her opponent's counsel based on the counsel's having requested excessive damages. That absence of caselaw is revealing, given that, in the court's experience, it is extraordinarily common for attorneys to make ambitious damages claims at the

9

start of litigation. Nevertheless, as far as the court can tell, no Tennessee court has ever held that a lawsuit against the opposing attorney for negligence is the appropriate response to such a situation. The lack of support for such a cause of action would not be fatal, if Du Preez had a convincing formal argument why such a claim should, in fact, be recognized, despite its absence from caselaw. Du Preez, however, has no such argument. In fact, the "Negligence" section of her Response does not cite a single case or statute. (Doc. No. 45 at 4–5.) The Complaint itself does no better in establishing why these facts should fall under the law of negligence. The negligence claim against McCoy will therefore be dismissed.

### C. Fraud

"'[I]ntentional misrepresentation,' 'fraudulent misrepresentation,' and 'fraud' are different names for the same cause of action" under Tennessee law. *Hodge v. Craig*, 382 S.W.3d 325, 342 (Tenn. 2012) (citing *Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 904 n.1 (Tenn.1999)). A plaintiff asserting such a claim must establish six elements:

> (1) that [the defendant] made a representation of an existing or past fact; (2) that the representation was false when it was made; (3) that the representation involved a material fact; (4) that [the defendant] made the representation recklessly, with knowledge that it was false, or without belief that the representation was true; (5) that the [plaintiff] reasonably relied on the representation; and (6) that [the plaintiff was] damaged by relying on the representation.

*Davis v. McGuigan*, 325 S.W.3d 149, 154 (Tenn. 2010) (citing *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008)). Because a fraud claim is subject to Rule 9(b), each of its "elements . . . must be pleaded with . . . particularity," *U.S. ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439, 445 (6th Cir. 2008), with the exception of culpable mental state, which the rule expressly states "may be alleged generally," Fed. R. Civ. P. 9(b).

As the court noted in its prior opinion, Du Preez's own theory of the case results in a poor fit with the "reliance" element of fraud. Du Preez has never claimed that she was ever led to

10

mistakenly rely on false information provided by McCoy or, for that matter, Benchmark. Rather, the parties openly disagreed regarding who owed what to whom, and they asserted their respective positions both informally and in litigation. That is not fraud; it is just disagreement.

Du Preez clearly objects to the actions that McCoy took in the collection litigation, but "fraud" is not a generic, catch-all term applicable any time that a person claims to have been harmed by the alleged dishonesty of another. It is an actual cause of action with specific elements, and Du Preez makes no meaningful argument that she has pleaded those actual elements plausibly or with particularity. The court, accordingly, will dismiss her fraud claim against McCoy, leaving only Du Preez's FDCPA claim against McCoy pending.

### IV. CONCLUSION

For the foregoing reasons, McCoy's Motion for Judgment on the Pleadings (Doc. No. 41) is hereby **GRANTED**, and Du Preez's claims against McCoy for negligence and fraud are hereby **DISMISSED**. Du Preez's claim against McCoy under the FDCPA remains pending. The initial case management conference is hereby **RESET** for August 7, 2023 at 1:30 p.m.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge